IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERESA R. MINNICK, | ) | 1:11cv0859 DLB |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Teresa R. Minnick ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

**FACTS AND PRIOR PROCEEDINGS[1]**

On July 21, 2008, Plaintiff filed an application for SSI. AR 129-35. She alleged disability since June 1, 2006, due to asthma, high blood pressure, hepatitis C, liver and heart problems and

---

[1] References to the Administrative Record will be designated "AR," followed by the relevant page number.

1

chronic obstructive pulmonary disease ("COPD").[1]  AR 149.  She subsequently alleged severe osteoarthritis, chronic pain, and worsening neck and shoulder pain.  AR 185, 195.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 73-77, 78-82, 83-84.  On August 23, 2010, ALJ James P. Berry held a hearing.  AR 24-46.  ALJ Berry denied benefits on September 16, 2010.  AR 6-18.  The Appeals Council denied Plaintiff's request for review on April 4, 2011.  AR 1-3.

Hearing Testimony

ALJ Berry held a hearing on August 23, 2010, in Fresno, California.  AR 24.  Plaintiff appeared with her attorney, James Yoro.  Vocational expert Linda Ferra also appeared and testified.  AR 26.

Plaintiff was born in 1963 and completed the seventh grade.  AR 28.  She can read and write in English.  She last worked in 2008 babysitting three children, one four-year-old and two school-age children.  AR 29-30.  In the last fifteen years, she also worked as a department store cashier and a department store folder and fluffer.  AR 30-31.

Plaintiff testified that her bipolar, COPD and degenerative disease of the neck affect her abilities and caused her to stop working.  She received treatment for her medical problems and takes methadone for her pain problems.  She has Complex Regional Pain Syndrome of her left upper extremity.  She has been in pain management for four months, but has been taking methadone for a year and a half.  Dr. Yankes prescribed the methadone for her neck, arm and back.  AR 31-33.

Plaintiff explained that she has a stabbing, burning pain in her neck.  She cannot lay on it, sleep well or sit or stand for a long time.  The methadone helps, but does not fix the pain.  Her other pain medications provide some relief.  She also has disc disease in her back, which causes burning and stabbing pain and she cannot bend down.  She cannot lift and carry more than five pounds with her left hand, but probably can lift and carry fifteen pounds with her right hand.  Although she cannot

---

[1]Plaintiff later amended her onset date of disability to December 2008.  AR 27-28.

grip with her left hand on a repetitive basis, she can grip occasionally and can use her left hand for picking up small objects. She does not have a problem using her right hand on a repetitive basis. AR 33-35.

Plaintiff testified that she has a problem with standing too long and sitting too long. She can stand and walk ten to fifteen minutes at one time followed by a half hour rest. She can sit comfortably about thirty minutes and then needs to walk for about ten minutes. AR 36-37.

On an average day, Plaintiff wakes up and does a breathing treatment using a nebulizer. She uses the nebulizer six times a day. During the day, she watches TV and tries to do the dishes. AR 39-40.

Plaintiff sought psychiatric help because she could not get Hepatitis C shots until she was seen by a psychiatrist. She has Hepatitis C and her doctor recommended Interferon treatment. As Plaintiff was depressed, the doctor wanted her on medication for at least a year before starting her shots because he was afraid she would not take the shots. AR 37. Dr. Zada has been her psychiatrist since the beginning of 2009. He diagnosed her with bipolar and anxiety, and he prescribed Celexa, Cymbalta, Abilify, Klonopin and Trazodone. Plaintiff explained that she had probably been bipolar most of her life, but had never really seen a doctor. She has mood swings, which is a fairly chronic situation. Her condition is beginning to even out now that she is on medications. AR 38-39.

In response to questions from the ALJ, the VE testified that Plaintiff's past work as a cashier was unskilled, light work. Her job as a sales attendant in retail was unskilled, light work. Her job as a child monitor was semi-skilled, SVP 3 and medium work. Her job as a folder/fluffer was unskilled, light work. AR 41.

For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual, forty-six years of age with a seventh-grade education and Plaintiff's past relevant work experience. The ALJ also asked the VE to assume this individual had a combination of severe impairments and retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. This individual retained the ability to stand, walk, and sit six hours each and occasionally

could climb ropes, ladders and scaffolds.  This individual occasionally could reach overhead bilaterally and occasionally could move the neck in all directions.  This individual also must avoid concentrated exposure to pulmonary irritants.  The ALJ asked the VE to further assume that this individual could perform simple, repetitive tasks and could maintain attention, concentration, persistence and pace.  This individual also could relate to and interact with others, could adapt to usual changes in the work setting and could adhere to safety rules.  AR 42.  The VE testified that such an individual could perform Plaintiff's past work as a cashier, a sales attendant and a folder/fluffer.  This individual also could perform other jobs that exist in the national economy, such as fast food worker, packing line-worker and assembler.  AR 42-43.

For the second hypothetical, the ALJ asked the VE to assume an individual with the same vocational parameters as the first hypothetical.  This individual retained the capacity to lift fifteen pounds maximum and could stand, walk and sit less than two hours total with the option to change position as needed.  This individual was limited in the use of the left, upper non-dominant extremity due to a decrease in range of motion and would have difficulty gripping and grasping with that extremity.  This individual also would require breaks lasting thirty minutes per day and would require a break to use a nebulizer approximately six times per day for fifteen to twenty minutes at a time.  AR 43.  The VE testified that such an individual could not perform Plaintiff's past work or any other jobs in the national economy.  AR 43-44.

For the third hypothetical, Plaintiff's counsel asked the VE to include in the first hypothetical that the individual needed to take unscheduled breaks up to six times a day for fifteen minutes.  The VE testified that such an individual would not be capable of performing Plaintiff's past relevant work or any other work in the national economy.  AR 44.

For the fourth hypothetical, Plaintiff's counsel asked the VE to assume the same parameters as the first hypothetical without the need to take breaks for the nebulizer.  Plaintiff's counsel asked the VE to assume further that this individual had a poor capacity to understand, remember and carry out complex instructions, a fair capacity to understand, remember and carry out simple instructions, a

poor capacity to maintain concentration, attention and persistence, a poor capacity to perform activities within a schedule and maintain regular attendance, and a poor capacity to complete a normal workday and workweek without interruptions from psychologically based symptoms. The VE testified that such an individual could not perform Plaintiff's past relevant work or any other work. AR 44-45.

The VE clarified that including no more than occasional neck movement in the ALJ's first hypothetical would not reduce the occupational base or the ability to perform past relevant work. AR 45.

Medical Record[2]

On July 18, 2007, Plaintiff sought emergency treatment for a panic attack, shortness of breath, chest tightness and increased anxiety after taking Lisinopropil and hydrochlorothiazide. She was diagnosed with an adverse drug reaction and prescribed Ativan. AR 249-50, 252. She left the emergency room before discharge. AR 253, 257-58.

On July 2, 2008, Plaintiff completed a Health & Lifestyle Assessment form. Dr. Max Yankes subsequently prescribed Wellbutrin and diagnosed Plaintiff with depression. AR 295-96.

On August 5, 2008, Plaintiff again sought treatment from Dr. Yankes. Following a self-assessment, she was diagnosed with depression and prescribed Prozac. AR 288-89.

On August 28, 2008, Dr. Yankes noted that Plaintiff had been referred to Dr. Paul Pasion-Gonzales at behavioral health. They discussed the case, including Plaintiff's report that Prozac was causing her nausea and irritability. Dr. Yankes discontinued her Prozac and prescribed sertraline (Zoloft). AR 323.

On September 19, 2008, Greg Hirokawa, PhD, completed a consultative psychiatric evaluation. Plaintiff complained of depression, anxiety, difficulty being around others, mood swings, withdrawal, poor concentration, loss of interest in things, frustration, irritability, memory

---

[2] Plaintiff's arguments are limited to her mental impairment(s). Accordingly, the medical record summary is limited primarily to Plaintiff's mental health.

problems and anger problems. Although she reported having depression and anger problems for most of her life, Plaintiff's recent symptoms of depression and anxiety were due primarily to her physical problems, pain and financial issues. Plaintiff identified a history of heavy drug and alcohol use. AR 304. She reported receiving mental health treatment for approximately three months. AR 305.

On mental status examination, Plaintiff's thought content was appropriate and her reality contact appeared intact. Her mood appeared mildly depressed and her affect was restricted. Plaintiff's intellectual functioning appeared to be within the below average range. Her recent and remote memory appeared intact. She was able to name three Presidents of the United States, but was unable to perform a simple three-step command and was unable to spell the word "world" backward. AR 306. Dr. Hirokawa diagnosed Plaintiff with depressive disorder NOS, generalized anxiety disorder, polysubstance dependence in recent remission and rule out learning disability. She had a current Global Assessment of Functioning ("GAF") of 61. AR 306-07.

Dr. Hirokawa concluded that Plaintiff's symptoms of depression and anxiety appeared to be within the mild range and primarily were due to her physical problems and associated limitations. AR 307. He opined that her ability to understand and to remember very short and simple instructions was mild to moderately limited. Her ability to understand and to remember detailed instructions was mild to moderately limited. Her ability to maintain attention and concentration was mild to moderately limited. Her ability to accept instructions from a supervisor and to respond appropriately was mild to moderately limited. Her ability to sustain an ordinary routine without special supervision was mild to moderately limited. Her ability to complete a normal workday and workweek without interruptions at a consistent pace was mild to moderately limited. Her ability to interact with coworkers was mild to moderately limited. Her ability to deal with various changes in the work setting was mild to moderately limited. Her ability to withstand the stress encountered in a competitive workplace was mild to moderately limited. The likelihood of her emotionally deteriorating in a work environment was minimal to moderate. Dr. Hirokawa noted that she would

probably benefit from counseling and a psychiatric medication evaluation. AR 307-08.

On November 13, 2008, Dr. G. Ikawa, a state agency medical consultant, completed a Psychiatric Review Technique form. He found that Plaintiff had a depressive disorder nos, a generalized anxiety disorder, a personality disorder nos, and polysubstance dependence in remission. AR 327-33. He opined that she had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation. AR 335-36.

On the same date, Dr. Ikawa also completed a Mental Residual Functional Capacity Assessment form. He opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. She had no other significant limitations. AR 338-39.

On February 23, 2009, Dr. Jaafar Zada of Kern County Mental Health opined that Plaintiff had been relatively stable on her current regimen and had been compliant with appointments and medications. With regard to her Hep C treatment, she would be able to understand and to make a decision if the procedure/treatment was explained to her. AR 493.

On March 6, 2009, Maria Ayon, MFT-1, of Kern County Mental Health, completed a Mental Status Exam. Ms. Ayon identified Plaintiff's behavior as agitated and her mood as depressed and anxious. Her thought process was unremarkable, but her judgment was impaired. AR 414-16. According to Ms. Ayon's assessment report completed on March 11, 2009, Plaintiff complained of difficulty coping with anxiety and depressive symptoms. She also reported that her doctor was requiring her to obtain psychiatric treatment before beginning interferon treatment for Hepatitis C. In discussing her substance abuse history, Plaintiff indicated that she had been "clean" for a year. She had used heroin, meth, acid, prescription pain pills and cocaine. She used hard liquor daily until her diagnosis with Hepatitis C. She used meth daily since age 15. Ms. Ayon opined that Plaintiff met the criteria for a diagnosis of Dysthymic Disorder early onset and Polysubstance Dependence. AR 417-23.

On March 26, 2009, Dr. Peter Mazur completed a Psychiatric Evaluation.  Plaintiff complained of depression, severe anxiety and restlessness, but indicated she was not taking any psychotropic medications.  On mental status examination, Plaintiff's mood was somewhat anxious. There was evidence of some racing thoughts, but her thinking was logical.  Her memory was fairly good and her attention and concentration were intact.  Dr. Mazur diagnosed her with Bipolar I Disorder, most recent episode, mixed, moderate and assigned a GAF of 45.  He indicated that Plaintiff had a long history of mood symptoms, including racing thoughts, mood swings, insomnia, energy fluctuations, crying spells, anxiety and depression.  Dr. Mazur also indicated that Bipolar II Disorder and Major Depressive Disorder needed to be ruled out.  He started Plaintiff on Abilify to control her mood symptoms and Vistaril for anxiety symptoms.  AR 424-25.

On April 23, 2009, Plaintiff was seen at Kern County Mental Health for complaints of severe anxiety.  Her mood was anxious and her thought process was racing.  AR 413.

Between August 14, 2009 and October 30, 2009, Plaintiff received treatment from Dr. Tsai at Kern County Mental Health for her Bipolar I disorder.  She was prescribed Abilify, Klonopin and Vistaril.  Dr. Tsai opined that Plaintiff had a moderate disability and was not able to work.  AR 474-80.

On October 13, 2009, Plaintiff reported that she was stable on her pysch meds.  AR 460.

Between December 1, 2009 and April 27, 2010, Plaintiff received treatment from Dr. Jafaar Zada at Kern County Mental Health for her Bipolar I disorder.  She was prescribed Klonopin and Vistaril.  Dr. Zada believed that Plaintiff had a moderate disability and was not able to work.  AR 461-73.

On March 23, 2010, Dr. Zada completed a Mental Capacities form.  He reported that Plaintiff had been depressed, irritable, with racing thoughts, mood swings and an inability to concentrate.  She had both decreased and poor memory and concentration.  She also had low tolerance to stress and might decompensate.  AR 584.

On May 11, 2010, Plaintiff's physician noted "[m]uch disparity in MH eval" and that

8

Plaintiff needed further mental health evaluations prior to Hep C treatment. AR 523.

On August 10, 2010, Dr. Zada completed a Short-Form Evaluation for Mental Disorders form. As to Plaintiff's current mental status examination, Dr. Zada reported that her motor-activity and speech were normal, but she had poor impulse control. She had average intelligence and was slightly distracted with moderately impaired concentration. Her mood was normal and her affect was appropriate. She had no hallucinations or illusions and her judgment was intact. Dr. Zada opined that Plaintiff had a poor ability to understand, remember and carry out complex instructions, a fair ability to understand, remember and carry out simple instructions, a poor ability to maintain concentration, attention and persistence, a poor ability to perform activities within a schedule and maintain regular attendance and a poor ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. He believed that Plaintiff was not capable of managing funds in her own best interest. AR 585-88.

### ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2008. She had the severe impairments of bipolar disorder, degenerative disc disease and chronic obstructive pulmonary disease. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand and/or walk 6 hours each in an 8-hour day, occasionally could climb ladders, ropes and scaffolds, reach overhead and move her neck in all directions and must avoid concentrated exposure to pulmonary irritants. She could perform simple repetitive tasks, could maintain concentration, attention, persistence and pace, could relate to and interact with others, could adapt to usual changes in work settings and could adhere to safety rules. Given this RFC, the ALJ concluded that Plaintiff could perform her past relevant work and, alternatively, could perform other jobs in the national economy. AR 11-17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to

deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**<u>REVIEW</u>**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 416.920 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since December 17, 2008; (2) has an impairment or a

10

combination of impairments that is considered "severe" (bipolar disorder, degenerative disc disease and chronic obstructive pulmonary disease) based on the requirements in the Regulations (20 C.F.R. § 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work; and, alternatively (5) can perform jobs existing in significant numbers in the national economy.  AR 11-17.

## DISCUSSION

A.    Treating Physician Opinion

Plaintiff contends that the ALJ failed to provide sufficient rationale for rejecting the opinion of her treating physician, Dr. Zada.  The Court agrees.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

When the opinion of a treating physician is not contradicted, an ALJ must set forth "clear and convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Further, an ALJ only may reject the contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir.2002).  Here, because the opinion of Dr. Zada was contradicted by the opinions of Dr. Hirokawa and the non-examining state agency physician, the ALJ was required to set forth specific and legitimate reasons to reject the opinion.

The ALJ gave "little weight" to Dr. Zada's opinion that Plaintiff had "poor ability to maintain concentration, attention, persistence, and pace" because it was "inconsistent with the medical record and opinion of Dr. Hirokawa."  AR 16.  Defendant asserts that this rejection was proper because Dr.

Zada's opinion was inconsistent with Dr. Hirokawa's opinion and with the medical record. Doc. 18, p. 7. However, the purported inconsistencies and the medical record were not proper reasons to reject Dr. Zada's opinion because (1) the ALJ failed to identify or describe any of the inconsistencies with the medical record; (2) the ALJ failed to explain why Dr. Hirokawa's 2008 findings, which were issued prior to Plaintiff's onset date, were properly credited over the more recent findings of Dr. Zada, who treated Plaintiff over the course of several months; and (3) the ALJ failed to address the totality of Dr. Zada's opinion, particularly his determination that Plaintiff had other functional limitations beyond poor concentration, attention, persistence and pace. AR 15. In order to disregard a treating physician's opinion, the ALJ must "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Here, the ALJ offered only his conclusion regarding Dr. Zada's opinion. Indeed, the ALJ did not discuss any of Dr. Zada's treating records or even set forth the entirety of Dr. Zada's opinion regarding Plaintiff's functional limitations.

Defendant claims that the ALJ was not required to accept Dr. Zada's "form opinion." Doc. 15, pp. 7-8. Defendant correctly notes that an ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). In this case, however, Dr. Zada's findings on the "form" were based expressly on Plaintiff's diagnosis and current mental status examination. AR 585-88. Further, the medical record contained Dr. Zada's prior evaluations and clinical findings. AR 461-73.

For these reasons, the Court concludes that the ALJ erred by failing to proffer specific and legitimate reasons to reject Dr. Zada's opinion.

B.   Remand

Section 405(g) of Title 42 of the United States Code provides: "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause

12

for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, there are outstanding issues the ALJ must consider on remand before a finding of disability can be made. For example, Plaintiff asserts that the ALJ erred in his evaluation of whether or not she meets or equals Listing 12.04 and 12.09 and whether or not the hypothetical presented to the VE properly accounted for Plaintiff's mental residual functional limitations. These issues are intertwined with the opinion of Plaintiff's treating physician, which the ALJ improperly rejected. The Court declines to address the ALJ's assessment at other steps of the sequential evaluation to the extent they require consideration of Dr. Zada's opinion. Rather, the matter should be remanded for the ALJ to properly evaluate the medical opinions and evidence concerning Plaintiff's mental limitations.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Teresa R. Minnick and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 20, 2012**              /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE